September 29, 1977

# 77–56  MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

## Role of the Solicitor General

The purpose of this memorandum opinion is to discuss (1) the institutional relationship between the Attorney General and the Solicitor General, and (2) the role that each should play in formulating and presenting the Government's position in litigation before the Supreme Court.

I

The Judiciary Act of 1789 created the Office of the Attorney General and provided that the Attorney General would prosecute and conduct all suits in the Supreme Court in which the United States was "concerned." Act of September 24, 1789, ch. XX, § 35, 1 Stat. 73. The Office of the Solicitor General was created in 1870. Act of June 22, 1870, ch. CL, § 2, 16 Stat. 162. The statute provided that there should be in the Department of Justice "an officer learned in the law, to assist the Attorney General in the performance of his duties, to be called the Solicitor General . . ."; and it provided further that the Attorney General could direct the Solicitor General to argue any case in which the Government had an interest. See Fahy,"The Office of the Solicitor General," 28 A.B.A.J. 20 (1942).

The statute was enacted at the behest of Attorney General Henry Stanbery. Mr. Stanbery had argued that his work load was great and that he needed assistance in preparing opinions and arguing cases before the Supreme Court. He suggested that a new office be created for the purpose of discharging these functions. Congress, perceiving that the measure would make it possible to discontinue the expensive practice of retaining special counsel to represent the Government in cases argued before the Supreme Court, acceded to his request. Id.

In 1878 the language of the statute was partially revised. The language of the revision has survived to the present day. The modern statute, codified at 28 U.S.C. § 518, provides in pertinent part:

(a) Except when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue suits and appeals in the Supreme Court and suits in the Court of Claims in which the United States is interested.

(b) When the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so.

The Department's own regulations provide that the Solicitor General performs his duties "subject to the general supervision and direction" of the Attorney General. 28 CFR § 0.20. The same language is used to describe the relationship between the Attorney General and the offices that report directly to him, such as the Office of Legal Counsel. The Assistant Attorneys General in charge of the various divisions perform their duties subject to the Attorney General's supervision, but under the direction of the Associate or Deputy Attorney General. From a legal standpoint, the relationship between the Attorney General and the Solicitor General would thus appear to be substantially the same as that existing between the Attorney General and the Assistant Attorneys General.

II

We think it plain from the language and history of the relevant statutes that the Office of the Solicitor General was not created for the purpose of relieving the Attorney General of the responsibility for formulating or presenting the Government's case in litigation before the Supreme Court. Congress simply intended to provide the Attorney General with a learned helper who would perform these functions at the Attorney General's direction. We note in passing that at least one Solicitor General has adopted this view publicly. *See, Fahy, supra,* at 21. We know of no public utterance by a Solicitor General to the contrary. *See, generally,* Cox, "The Government in the Supreme Court," 44 Chi. B. Record 221 (1963), Soboloff, "The Law Business of the United States," 34 Ore. L. Rev. 145 (1955); Stern, "Inconsistency in Government Litigation," 64 Harv. L. Rev. 759 (1951). The short of the matter is that under law the Attorney General has the power and the right to "conduct and argue" the Government's case in any court of the United States. 28 U.S.C. § 518(b).

III

Traditionally, however, the Attorney General has given the Solicitor General the primary resonsibility for presenting the Government's views to the Supreme Court, and in the discharge of that function the Solicitor General has enjoyed a marked degree of independence.

Indeed, his independence has been so great that one Solicitor General, Francis Biddle, was led to remark:

> He [the Solicitor General] determines what cases to appeal, and the client has no say in the matter, he does what his lawyer tells him, the lawyer stands in his client's shoes, for the client is but an abstraction. He is responsible neither to the man who appointed him nor to this immediate superior in the hierarchy of administration. The total responsiblity is his, and his guide is only the ethic of his law profession framed in the ambience of his experience and judgment. (F. Biddle, In Brief Authority 97 (1962).)

Because the question of the "independence" of the Solicitor General has a direct and important bearing upon the general question to which this memorandum is addressed, we shall consider it in some detail.

Mr. Biddle's statement suggests that the Solicitor General has enjoyed two kinds of independence. First, he has enjoyed independence within the Department of Justice. It is he, of all the officers in the Department, who has been given the task of deciding what the Government's position should be in cases presented to the Supreme Court. The views of subordinate officers within the divisions of the Department are not binding upon him, and the Attorney General has made it a practice not to interfere. With respect to his relation to the Attorney General, we feel constrained to add, however, at the risk of repetition, that the Solicitor General's independent role has resulted from a convenient and necessary division of labor, not from a separation of powers required by law. Moreover, Francis Biddle may have overstated the case to some degree. Under the relevant statutes, as noted, the Attorney General retains the right to assume the Solicitor General's function himself, if he conceives it to be in the public interest to do so.

Secondly, the Solicitor General has enjoyed independence within the executive branch as a whole. He is not bound by the views of his "clients." He may confess error when he believes they are in error. He may rewrite their briefs. He may refuse to approve their requests to petition the Court for writs of *certiorari.* He may oppose (in whole or in part) the arguments that they may present to the Court in those instances where they have independent litigating authority.

The reasons for this independence are, for the most part, familiar:

First, it has been thought to be desirable, generally, for the Government to adopt a single, coherent position with respect to legal questions that are presented to the Supreme Court. Because it is not uncommon for there to be conflicting views among the various offices and agencies within the executive branch, the Solicitor General, having the responsibility for presenting the views of the Government to the Court, must have power to reconcile differences among his clients, to accept the views of some and to reject others, and, in proper cases, to formulate views of his own.

Second, as an officer of the Court and as an officer of Government, the Solicitor General has a special duty to protect the Court in the discharge of its constitutional function. He protects the Court's docket by screening the Government's cases and relieving the Court of the burden of reviewing unmeritorious claims. He prepares accurate and balanced summaries of the records in the cases that are presented for review; and within the limits of proper advocacy, he provides the Court with an accurate and expert statement of the legal principles that bear upon the questions to be decided.

Third, as an officer who plays an important role in the development of the law, he has a duty to protect the law from disorderly growth. He is called upon to decide questions of "ripeness" in the most general sense: on a case-by-case basis he must determine whether *this* is the appropriate time for presenting *this* issue to the Supreme Court on *this* record. *See* Cox, *supra,* at 226. In order to discharge that function, he must have, among other things, the power to refuse requests for petitions for *certiorari* and the power to decline to present the Government's views, as *amicus,* in cases in which the Government might otherwise have an interest.

Finally, and most importantly, the Solicitor General has assumed an independent status because of the prevalent belief that such independence is necessary to prevent narrow or improper considerations (political or otherwise) from intruding upon the presentation of the Government's case in the Nation's highest Court. It was a Solicitor General, Frederick W. Lehmann, who wrote that "the United States wins its point whenever justice is done its citizens in the courts"; and the burden of history is that justice is done most often when the law is administered with an independent and impartial hand. The Nation values the Solicitor General's independence for the same reason that it values an independent judiciary. The Solicitor General has been permitted his independence largely because of the belief, as Mr. Biddle put it, that "the ethic of his law profession framed in the ambience of his judgment and experience" should be his only guide.

## IV

In what circumstances should the Attorney General exercise his right to "conduct" litigation before the Supreme Court? To the extent that the Solicitor General's traditional role reflects a simple division of labor within the Department, it is plain that the Attorney General may exercise his prerogative whenever it is administratively convenient for him to do so. The real question is to what extent he can intervene, in individual cases, without doing violence to the important principles or functions that have justified the Solicitor General's independence within the Government at large.

We have identified four such principles or functions: the Solicitor General must coordinate conflicting views within the executive branch;

he must protect the Court by presenting meritorious claims in a straightforward and professional manner and by screening out unmeritorious ones; he must assist in the orderly development of decisional law; and he must "do justice"—that is, he must discharge his office in accordance with law and ensure that improper concerns do not influence the presentation of the Government's case in the Supreme Court.

In our opinion, there is no institutional reason why the Attorney General could not, in individual cases, discharge all four of these functions as well as the Solicitor General. However, in practice the Attorney General could never be sure that he was exercising the independent judgment essential to the proper performance of those functions if he acted alone without the advice of an independent legal adviser, *i.e.,* the Solicitor General.

The Attorney General is responsible for the objective and evenhanded administration of justice independent of political considerations or pressures. However, he is also a member of the President's Cabinet and responsible for advising the President on many of the most important policy decisions that are made in the executive branch. He is necessarily exposed repeatedly to nonlegal arguments and opinions from other Cabinet members. His is the difficult task of separating the different factors that might properly be considered in his role as a policy adviser from those relevant to his duties as the chief legal officer of the Government.

The Constitution requires the President, and thus the Attorney General, to execute the laws faithfully. It requires them to follow the law, even if that course conflicts with policy. For this reason alone, in our view, the tradition of the "independent" Solicitor General is a wise tradition. It has arisen because it serves a useful constitutional purpose. Very simply, an independent Solicitor General assists the President and the Attorney General in the discharge of their constitutional duty: concerned as they are with matters of policy, they are well served by a subordinate officer who is permitted to exercise independent and expert legal judgment essentially free from extensive involvement in policy matters that might, on occasion, cloud a clear vision of what the law requires. While it is doubtful whether either the President or the Attorney General could "delegate" to the Solicitor General the ultimate responsibility for determining the Government's position on questions of law presented to the Supreme Court, as a matter of practice, in the discharge of their offices, they can allow themselves the benefit of his independent judgment, and they can permit his judgment to be dispositive in the normal course.

The dual nature of the Attorney General's role as a policy and legal adviser to the President strengthens, in our view, the necessity for an independent Solicitor General. To the extent the Solicitor General can be shielded from political and policy pressures—without being unaware of their existence—his ability to serve the Attorney General, and the

232

President, as "an officer learned in the law" is accordingly enhanced. For this reason we believe the Solicitor General should not be subjected to undue influence from executive branch officials outside the Department of Justice. The Solicitor General should not be viewed as having final, essentially unreviewable authority in controversial cases, because such a role would inevitably subject him to those policy pressures that can obscure legal insights. The Attorney General, we believe, reinforces the independence of the Solicitor General by allowing himself to act as the final legal authority in those small number of cases with highly controversial policy ramifications. As such, the Attorney General and not the Solicitor General will be the focus of policy pressures from both within and outside the executive branch.

We do not believe that the Attorney General's power to direct the prosecution of cases in the Supreme Court should never be exercised, but we do believe that the tradition of the independent Solicitor General is one that should be preserved. We think that the Attorney General can participate in the formulation of the Government's position before the Court in certain circumstances without doing violence to that tradition; but, because of the value of the Solicitor General's independence, there are procedural and substantive considerations that should guide and temper the exercise of that power.

## V

Procedural Considerations. Undoubtedly, the working relationship between the Attorney General and the Solicitor General is one that will vary from Administration to Administration in accordance with the personalities of the individuals who hold these offices; but as we have said, the traditional pattern is one of noninterference. From this tradition we derive a rule of procedure: in our opinion, with respect to any pending case, the Solicitor General should be given the opportunity to consider the questions involved and to formulate his own initial views with respect to them without interference from the Attorney General or any other officer in the Administration.

There are at least two reasons for following a procedure of this kind. First, the procedure ensures that the Attorney General (and the President) will enjoy the benefit of the Solicitor General's independent judgment in every case. That independence would be compromised if the Solicitor General were subjected to frequent advice or suggestions from the President or the Attorney General before he is allowed to formulate his own position. Second, this procedure helps to ensure that the Attorney General will not exercise his supervisory powers gratuitously. No one can say what the Solicitor General's position will be before he has taken it.

This brings us to a related point. The Solicitor General should be allowed to formulate a position with respect to pending cases, and he should be allowed to act independently in the discharge of that func-

233

tion, but he should not be required to make his decision in an informational vacuum. He is not omniscient, and he should be free to consult the various offices and agencies in the executive branch that may have views on the questions presented by the case at hand. In fact, this is the traditional practice. The Solicitor General does consult and is consulted by other officers of Government. Far from detracting from his independent function, this practice enhances its value. It ensures that the Solicitor General's judgment will be informed judgment.

Substantive Considerations. Once the Solicitor General has taken a position with respect to a pending case, that position will, in most cases, become the Government's position as a matter of course. However, in some cases the Attorney General may need to determine whether or not the Government should adopt that position. Plainly, the Attorney General, as well as the President, have the power to decline to adopt it, but to exercise that power is to reject the Solicitor General's independent and expert legal counsel in favor of other legal advice or policy considerations.

We should make one observation at this point. We have said that an independent Solicitor General assists the Attorney General and the President in the discharge of their constitutional duty to put law before policy. It is our opinion that if the Solicitor General is to be of real value in that regard, his judgment must be permitted to be dispositive in the ordinary course. The Government's position should be changed by the Attorney General only in rare instances.

How does one identify the "rare instances" in which intervention by the Attorney General may be justifiable? We can offer no litmus test, but we wish to make several observations that bear upon the question.

First, in our opinion, the mere fact that the Attorney General may disagree with the Solicitor General over a question of law is not ordinarily a sufficient reason for intervention in a given case. If the Solicitor General has fallen into error, the Supreme Court will have an opportunity to correct the error, and the Government's ultimate interest in a just result will be vindicated. If the Court upholds his position, then all the better, for his legal judgment and not that of his superiors, was correct. In either case, for all of the reasons given above, the potential benefit of intervention is usually outweighed, in our view, by the mischief inherent in it.

There may be a case in which the Attorney General is convinced that the Solicitor General has erred so far in the legal analysis that intervention is required. We believe such cases will be quite rare, but when they arise the Attorney General must follow the rule of law himself and be guided by his own experience and judgment.

There is another category of questions that may be involved in cases presented to the Supreme Court with respect to which the Attorney General's or the President's judgment may be essential. Our analysis

turns upon the uncertain but traditional distinction between questions of law and questions of policy.

All of the cases that are decided by the appellate courts can be said to involve "questions of law" in a technical sense. The outcome in each case must be justified by reference to rules or principles that are prescribed in the Constitution, statutes, regulations, ordinances, or in the previous decisions of the courts. In some cases, however, questions of "policy" are integrally intertwined with questions of law. In other cases the major decision may be a discretionary one such as filing of an *amicus* brief when there has been no request from the Court for the views of the Government.

The Solicitor General can and should enjoy independence in matters of legal judgment. He should be free to decide what the law is and what it requires. But if "law" does not provide a clear answer to the question presented by the case before him, we think there is no reason to suppose that he, of all the officers in the executive branch, should have the final responsibility for deciding what, as a matter of policy, the interests of the Government, the parties, or the Nation may require. To our knowledge, no Solicitor General has adopted a contrary view.

The short of the matter is that cases may arise in which questions of policy are so important to the correct resolution of the case that the principles that normally justify the Solicitor General's independent and dispositive function may give way to the greater need for the Solicitor General to seek guidance on the policy question. Questions of policy are questions that can be effectively addressed by the Attorney General, a Cabinet officer who participates directly in policy formation and who can go to the President for policy guidance when the case demands.

But the Attorney General and the President should trust the judgment of the Solicitor General not only in determining questions of law but also in distinguishing between questions of law and questions of policy. If the independent legal advice of the Solicitor General is to be preserved, it should normally be the Solicitor General who decides when to seek the advice of the Attorney General or the President in a given case.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
